968 F.2d 21
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellant,
v.
Robert Lawrence BOYLL, Defendant-Appellee.
 No. 91-2235.
 United States Court of Appeals, Tenth Circuit.
 June 16, 1992.
 
 Before McKAY, Chief Judge, MOORE, Circuit Judge, and EISELE, Senior District Judge*.
 ORDER AND JUDGMENT**
 EISELE, Senior District Judge.
 We are confronted at the threshold with the defendant-appellee's motion to dismiss the Appeal filed on March 25, 1992. By order entered April 8, 1992 we deferred ruling on this motion until after the oral argument. Now having taken up and considered the motion, we conclude that same should be granted. This appeal will therefore be dismissed.
 The motion to dismiss this appeal contends that the government failed to appeal the order of the trial court which dismissed the indictment on the basis of the defendant Boyll's "Motion to Dismiss No. 2."
 The record reflects that the defendant Boyll filed two separate motions to dismiss the indictment: (1) Motion to Dismiss No. 1 based on the interpretation of 21 C.F.R. 63701.31 and (2) Motion to Dismiss No. 2 based on the First Amendment to the U.S. Constitution dealing with the free exercise of religion.
 More particularly the defendants motion to dismiss No. 1 asks that the indictment be dismissed:
 ... since the listing of peyote as a controlled substance in schedule I of the Controlled Substance Act 21 U.S.C. § 812(c) does not apply to the defendant's use and possession of peyote in connection with his bona fide religious worship within the Native American Church pursuant to 28 C.F.R. § 1307.31.
 The prayer in said motion states:
 WHEREFORE, the defendant respectfully requests this court pursuant to the religious exemption for the use of peyote within the NAC under 28 C.F.R. § 1307.31 to find that defendant's possession of peyote did not constitute a crime as a matter of law and dismiss the indictment in this case.
 Motion to Dismiss No. 2 moves for dismissal:
 ... since the conduct alleged constitutes acts of religious faith and is protected under the Free Exercise Clause, in combination with the Free Speech and Free Association clauses, of the First Amendment.
 The first two grounds stated for said motion are:
 1. Defendant is charged with having mailed himself a quantity of peyote from Mexico to his home in San Cristobal, New Mexico. An additional amount of peyote was located in the defendant's home.
 2. Defendant is, and has been since 1981, a practicing member of the Native American Church (NAC). His procurement and possession of peyote was motivated solely due to his need for peyote for ceremonial use within the Native American Church.
 The prayer in Motion No. 2 reads as follows:
 WHEREFORE, the defendant respectfully requests this court recognize that Boyll's right to the free exercise of religion outweighs the government's interest in criminally prohibiting the religious use of peyote and dismiss the three counts of the indictment in this case.
 In the Introduction to Appellants' brief we find the source of the problem which has led to the dismissal of the appeal. The introduction states:
 The trial court dismissed the indictment in this case. (Doc. 54 at 22). The indictment charged three crimes: Importation of Peyote (Count I); Possession with Intent to Distribute Peyote (Count II); Unlawful Use of a Communication Facility in Causing and Facilitating the Importation of Peyote (Count III). The United States challenges only the dismissal of Counts I and III. The United States does not challenge the trial Court's dismissal of Count II which charged Possession with Intent to Distribute Peyote. Accordingly, the facts and law which follow relate solely to the two counts of the indictment which the United States claims were improperly dismissed.
 In the trial court, the parties also litigated issues which are not involved in this appeal. These issues involved whether the conduct alleged in the indictment was protected by the free exercise clause of the First Amendment, and whether a non-Indian could be a member of the Native American Church. These issues relate exclusively to Count II of the indictment which charged possession with intent to distribute peyote. The dismissal of Count II is not before this Court. Accordingly, this appeal does not raise any constitutional issues. The only issue before the Court concerns the trial court's interpretation of a regulation.
 The government's brief goes on to deal with only one point, to-wit:
 Point I: Because 21 C.F.R. 1307.31 (1990) does not apply to the importation of peyote, the trial court improperly dismissed Counts I and III of the indictment.
 The trouble is that the trial court's decision to dismiss the indictment was based on two independent grounds. The government has elected to pursue only the issue dealing with the interpretation of the regulation. If a decision were rendered in favor of the government on this issue (the interpretation of the regulation) the government would not be entitled to a reinstatement of the indictment. The indictment would remain dismissed. Looked at one way the trial court's opinion is saying that if the government is correct in its interpretation of the regulation then that regulation (as so interpreted) would be unconstitutional. Looked at another way the opinion could be viewed as simply stating that, under the facts and circumstances of this case, the government could not, consistent with the First Amendment, indict Mr. Boyll for the crimes alleged in the indictment. So, if the lower court's order dismissing the indictment on constitutional grounds is not disturbed, it avails the government naught to prevail on its interpretation of 21 C.F.R. § 3701.31.
 It is necessary to carefully review and analyze Judge Burciago's Memorandum Opinion and Order of September 3, 1991, to be certain that he in fact granted defendant-appellee's Motion to Dismiss No. 2 in addition to the defendant-appellee's Motion to Dismiss No. 1. At page 3. thereof we find the following statement:
 In his motions to dismiss, Mr. Boyll argues that the indictment violates his First Amendment right to freely exercise his religion. Mr. Boyll also claims that, pursuant to 21 C.F.R. § 1307.31 (1990), the listing of peyote as a controlled substance does not apply to him because he is a member of the Native American Church and he imported and possessed peyote for use in bona fide religious ceremonies of the Native American Church.
 So we see the trial judge directly referring to both "motions to dismiss." In fact the court consistently refers to the motions in the plural. More significantly the order at the conclusion of the opinion states:
 It is Ordered, Adjudged and Decree that Defendant Robert Boyll's motions to dismiss the indictment be and hereby are Granted.
 Looking at the body of the lower court's opinion makes clear beyond question that the lower court dealt with and resolved to its satisfaction the constitutional issues presented by the Motion to Dismiss No. 2. A limited number of quotations from the opinion will suffice to demonstrate this, starting with the opening paragraph:
 There is a genius to our Constitution. Its genius is that it speaks to the freedoms of the individual. It is this genius that brings the present matter before the Court. More specifically, this matter concerns a freedom that was a natural idea whose genesis was in the Plymouth Charter, and finds its present form in the First amendment to the United States Constitution--the freedom of religion.
 The Government's "war on drugs" has become a wildfire that threatened to consume those fundamental rights of the individual deliberately enshrined in our constitution. (Page 1)
 * * *
 * * *
 But today, the "war" targets one of the most deeply held fundamental rights--the First Amendment right to freely exercise one's religion.
 To us in the Southwest, this freedom of religion has singular significance because it affects diverse cultures. It is as much of us as the rain on our hair, the wind on the grass, and the sun on our faces. (Page 1, 2)
 * * *
 * * *
 The issue presented is the recurring conflict between the Native American Church members' right to freely exercise their religion through the ceremonial use of peyote and the Government's efforts to eradicate illegal drugs. To the Government, peyote is a dangerous hallucinogen. To Robert Boyll, peyote is both a sacrament and a deity essential to his religion. But this matter concerns competing interests far greater than those relating to this small, spineless cactus having psychedelic properties. It draws forth a troublesome constitutional conflict which arises from fundamentally different perspective of peyote.
 In its "war" to free our society of the devastating effects of drugs, the government slights its duty to observe the fundamental freedom of individuals to practice the religion of their choice, regardless of race. Simply put, the Court is faced with the quintessential constitutional conflict between an inalienable right upon which this country is founded and the response by the government to the swelling political passions of the day. In this fray, the Court is compelled to halt this menacing attack on our constitutional freedoms. (Page 2, 3,)
 * * *
 * * *
 The Court will next address the constitutional question of whether the indictment violates Mr. Boyll's First Amendment right to freely exercise his religion. It is disingenuous for the government to contend that its racially restrictive reading of 21 C.F.R. § 1307.31--which would restrict religious freedom through the imposition of a racial exclusion--does not give rise to valid constitutional concerns. Since the use of peyote by Native American Church members is the very essence of their religious beliefs, the proposed racially restrictive reading of 21 C.F.R. § 1307.31 would have the sure effect of imposing a racial exclusion to membership in the Native American Church itself. To exclude individuals of a particular race from being members of a recognized religious faith is offensive to the very heart of the First Amendment. See Waltz v. Tax Comm'n of New York, 397 U.S. 664, 668-69 (1970) (the First Amendment's Establishment Clause ensures that government interference with religion will not be tolerated). In fact, there can be no more excessive entanglement of Government with religion than the government's attempt to impose a racial restriction to membership in a religious organization. The decision as to who can and who cannot be members of the Native American Church is an internal church judgment which the First Amendment shields from governmental interference. Cf. Paul v. Watchtower Bible & Tract Society, 819 F.2d 875, 878, n. 1. (9th Cir.) (constitutionally improper for government to resolve a dispute about religious doctrine or practices), cert. denied, 484 U.S. 926 (1987). It is one thing for a local branch of the Native American Church to adopt its own restrictions on membership, but it is entirely another for the government to restrict membership in a religious organization on the basis of race. Any such attempt to restrict religious liberties along racial lines would not only be a contemptuous affront to the First Amendment guarantee of freedom of religion but also to the Fourteenth Amendment right to equal justice under the law. (Page 15, 16)
 
 
 1
 * * *
 
 
 2
 * * *
 
 
 3
 The Free Exercise clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging of freedom, ... or the right of the people to assemble ..." U.S. Const. Amend. I. While the freedom to act upon religious beliefs is not absolute, "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." Wisconsin v. Yoder, 406 U.S. 205, 215 (1972). Traditional free exercise jurisprudence has long held that in order for government to substantially burden religiously motivated conduct, the government must justify such restriction by a compelling state interest and use means narrowly tailored to achieve that interest. (Page 16, 17)
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 With respect to the first step of the analysis, it is uncontradicted that the racially restrictive interpretation of 21 C.F.R. § 1307.31 would impose a substantial burden on Mr. Boyll's free exercise of religion. (Page 18)
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 First, the United States has failed to present any evidence of a compelling interest to justify its actions in the present case. "In the absence of evidence, we cannot simply assume that the psychedelic is so baneful that its use must be prohibited to a group of [non-Indian] members but poses no equal threat when used by [Indian] members of the Native American Church.' Peyote Way Church of God, 742 F.2d at 201. In act, in light of the absence of factual support and the scarcity of legal support for the United States' opposition to Defendant's motions to dismiss, this Court cannot help but believe that the present prosecution is, at best, an overreaction driven by political passions or, at worst, influenced by religious and racial insensitivity, if not outright hostility. (Page 19, 20)
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 Individual freedom, whether it be freedom of religion, expression or association, has been particularly important to maintain the culturally diverse character of New Mexico. Here, we celebrate the right of the individual to revel in the passions of the spirit. The survival of this right owes much to the protection afforded by the First Amendment, which has allowed New Mexico's distinct cultures to learn mutual respect for each other's jealously-guarded customs and traditions. Diversity is New Mexico's enchantment. (Page 21)
 
 
 13
 So clearly the Lower Court dealt with and ruled on the defendant Appellee's Motion to dismiss the entire indictment on First Amendment grounds.
 
 
 14
 The government states that the rulings on constitutional grounds only affects Count II, the possession count. But there is nothing to justify that position and the lower court's opinion makes it clear that it was dealing with all three counts of the indictment. Count I charges Mr. Boyll with having intentionally imported peyote, a Schedule I substance into the United States from Mexico. Count III charges him with intentionally using a communication facility, to-wit, the U.S. mails in facilitating the importation of peyote into the U.S. from Mexico.
 
 
 15
 Judge Burciaga went to great length in his opinion to explain the religious beliefs of the Native American Church and the use of peyote in its teachings. He specifically found that:
 
 
 16
 "To Robert Boyll, peyote is both a sacrament and a deity essential to his religion."
 
 
 17
 Id. p. 2. He approved the following description from Mr. Omer C. Stewart's Peyote Religion:
 
 
 18
 "Peyote is a sacred medicine; peyote protects; peyote allows one to see the future, or to find lost objects; peyote gives power to the user that may be manifest in various ways; peyote teaches; peyote may be used by christians or may be incorporated with christian ideas; a pilgrimage to gather peyote plants is viewed as an act of piety to be undertaken if possible...."
 
 
 19
 Id. p. 4, 5.
 
 
 20
 So trips to obtain the peyote are a part of the religious exercise. He also describes the defendant Boyll's personal involvement with this religion, after noting that non-Indian members are accepted into the Native American Church:
 
 
 21
 Since attending the first ceremony of the Native American Church at Taos, New Mexico, in 1981, Mr. Boyll has been, and continues to be, an active member of the Native American Church. In fact, while living in Mill Valley, California, from 1981 until 1989, Mr. Boyll participated in ceremonies of Native American Church an average of once every two to three weeks. Mr. Boyll often sponsored these meetings or participated as a drummer, cedarman or fireman. He sincerely believes in the teachings and practices of the Native American Church. He has only used peyote in connection with bona fide religious purposes and has never been excluded from the Native American Church because of his non-Indian race.
 
 
 22
 In 1989, motivated in part by his commitment to the Native American Church, Mr. Boyll moved to New Mexico. He continues his active participation in meetings of Native American Church congregations in northern New Mexico and southern Colorado. During one specific peyote meeting, Mr. Boyll was explicitly recognized as a member of the Native American Church by Rutherford Loneman, a well-known roadman who is also a former Vice-Chairman of the Native American Church in Oklahoma. Yet, Mr. Boyll has always considered himself a member of the native American Church rather than of a specific branch.
 
 
 23
 Id. p. 8. Counts I and III deal with the importation of peyote. The lower court's opinion dealt with the religious significance of "pilgrimages" to obtain the peyote:
 
 
 24
 The act of traveling to the place where peyote is harvested is considered an act of piety which has its own rewards. The long, sacred pilgrimage to harvest peyote is considered to be one of the most important aboriginal traditions of the Peyote Religion. Peyote Religion at 31-32 ("When the [peyote]-seekers arrive [back] at their homes, the people turn out to welcome the plants with music, and a festival ..."). Peyote is grown only in northern Mexico and the Rio Grande Valley of southern Texas. Peyote is not grown anywhere else and its growth area, especially in the United States, is being considerably depleted. Peyote Religion at 334-35.
 
 
 25
 Because the peyote fields in Texas are depleted, Mr. Boyll went on a "pilgrimage" to Mexico to obtain peyote for himself and members of the congregations with whom he worships. From Mexico, Mr. Boyll mailed the peyote to his post office box in San Cristobal, New Mexico, to avoid violating Texas law, which restricts religious possession and use of peyote only to Native Americans. See Tex. Health & Safety Code Anno. § 481.111 (Vernon 1989). On April 27, 1990, Mr. Boyll picked up the parcel of peyote from the post office in San Cristobal, New Mexico. He was on his way to deliver the peyote to Tellus Goodmorning, an elder of the Taos Pueblo and nationally respected roadman, when he was arrested.
 
 
 26
 Id. p. 9, 10. So it is obvious that the lower court dealt with both of the "importation" Counts (Counts I and III) in reaching its conclusion that all three Counts would have to be dismissed on constitutional grounds.
 
 
 27
 There has been no challenge in the present appeal to the lower court's findings as to Mr. Boyll's membership in the Native American Church; the sincerity of his religious convictions; the role in Mr. Boyll's religion of "pilgrimages" to obtain peyote; or the fact that he traveled to Mexico and obtained and mailed the peyote back to the U.S. as a part of his exercise of his religious beliefs. We assume the government does not disagree with such findings or with the lower court's reliance thereon in dealing with the constitutional issues raised by the defendant-appellee's Motion to Dismiss No. 2. In any event it has not chosen to appeal from the court's ruling on such issues or to challenge the factual predicates therefor. By choosing only to challenge the lower court's ruling on the interpretation of 21 C.F.R. 1307.31 (1990), it leaves us with no choice but to dismiss this appeal, thereby leaving the lower court's dismissal of this indictment intact.
 
 
 28
 SO ORDERED.
 
 
 
 *
 Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 35.3